**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SHIVA STEIN,<br><br>Plaintiff,<br><br>v.<br><br>CIT GROUP INC., ELLEN R. ALEMANY, MICHAEL L. BROSNAN, MICHAEL A. CARPENTER, DORENE C. DOMINGUEZ, ALAN FRANK, WILLIAM M. FREEMAN, R. BRAD OATES, GERALD ROSENFELD, VICE ADMIRAL JOHN RYAN, SHEILA A. STAMPS, KHANH T. TRAN, AND LAURA S. UNGER,<br><br>Defendants. | : | Civil Action No. ______________<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against CIT Group Inc., ("CIT Group or the "Company") and the members CIT Group's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between CIT Group and First Citizens Bancshares, Inc. and its affiliates ("First Citizens").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on November 16, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby FC Merger Subsidiary IX, Inc., a direct wholly-owned subsidiary of First-Citizens Bank & Trust Company, a direct wholly-owned subsidiary of First Citizens, will merge with and into CIT Group with CIT Group surviving the first step merger and becoming a wholly-owned subsidiary of First Citizens Bank and as soon as reasonably practicable, will merge with and into First Citizens Bank, with First Citizens Bank surviving in the second step merger. Thereafter, CIT Bank, N.A., a wholly-owned subsidiary of CIT, will merge with and into First Citizens Bank, with First Citizens Bank continuing as the surviving bank (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each CIT Group stockholder will receive 0.06200 First Citizens shares (the "Merger Consideration").

3. As discussed below, Defendants have asked CIT Group's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Keefe, Bruyette & Woods, Inc. ("KBW") and Morgan Stanley & Co. LLC ("Morgan Stanley" and together with KBW, the "Financial Advisors"), in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CIT Group's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because CIT Group is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of CIT Group stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Ellen R. Alemany has served as a member of the Board since January 2014 and is the Company's Chief Executive Officer and Chairwoman of the Board.

11. Individual Defendant Michael L. Brosnan has served as a member of the Board since November 2016.

12. Individual Defendant Michael A. Carpenter has served as a member of the Board since May 2016.

13. Individual Defendant Dorene C. Dominguez has served as a member of the Board since February 2017.

14. Individual Defendant Alan Frank has served as a member of the Board since August 2015.

15. Individual Defendant William M Freeman has served as a member of the Board since July 2003.

16. Individual Defendant R. Brad Oates has served as a member of the Board since December 2009.

17. Individual Defendant Gerald Rosenfeld has served as a member of the Board since January 2010.

18. Individual Defendant Vice Admiral John Ryan has served as a member of the Board since July 2003.

19. Individual Defendant Sheila A. Stamps has served as a member of the Board since February 2014.

20. Individual Defendant Khanh T. Tran has served as a member of the Board since July 2017.

21. Individual Defendant Laura S. Unger has served as a member of the Board since January 2010.

22. Defendant CIT Group a Delaware corporation and maintains its principal offices at 11 West 42nd Street, New York, New York 10036. The Company's stock trades on the New York Stock Exchange under the symbol "CIT."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Individual Defendants" or the "Board."

24. The defendants identified in paragraphs 10-22 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

25. CIT Group operates as the holding company for CIT Bank, N.A. that provides banking and related services to commercial and individual customers. The company operates through Commercial Banking and Consumer Banking segments. The Commercial Banking segment provides a range of commercial lending, leasing, and deposit products; loans comprising revolving lines of credit, term loans, unsecured loans, collateral-backed loans, asset-based loans, commercial real estate loans, and cash flow loans; and ancillary services and products, including cash management, capital markets, and advisory services primarily to small and middle market companies. This segment also offers asset management, factoring, receivable management, and secured financing services; supply chain financing, leasing and equipment financing to small businesses and middle market, and railroads and shippers. The Consumer Banking segment provides checking, savings, money market, and individual retirement accounts; time deposits and certificates of deposit; residential mortgage loans; small business administration loans; payment solutions; and fiduciary services. The company also offers leasing and advisory, and online banking services. It operates through a network of approximately 60 branches located in southern California. CIT Group Inc. was founded in 1908 and is based in New York, New York.

26. On October 16, 2020, the Company and First Citizens jointly announced the Proposed Transaction:

> RALEIGH, North Carolina and NEW YORK, New York – October 16, 2020 – First Citizens BancShares, Inc. (NASDAQ: FCNCA) ("First Citizens"), the parent company of First-Citizens Bank & Trust Company, and CIT Group Inc. (NYSE: CIT) ("CIT"), the parent company of CIT Bank, N.A., jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals to create the 19th largest bank in the United States based on assets.
>
> The transformational partnership will create greater scale to drive growth, improve profitability and enhance stockholder value. The transaction brings together the complementary strengths of First Citizens' low-cost retail deposit franchise and full suite of banking products with CIT's national commercial lending expertise and strong market positions. In addition, it creates a more diversified deposit strategy with First Citizens' 550+ full-service retail banking locations in key growth MSAs, including across the Southeast, and CIT's rapidly growing homeowner association business, leading direct bank and complementary Southern California retail branch network.
>
> Under the terms of the definitive merger agreement, which was unanimously approved by the Boards of Directors of both companies, CIT stockholders will receive 0.0620 shares of First Citizens class A common stock for each share of CIT common stock they own. First Citizens stockholders will own approximately 61% and CIT stockholders will own approximately 39% of the combined company.
>
> The combined company will operate under the First Citizens name and will trade under the First Citizens ticker symbol FCNCA on the Nasdaq stock market. The combined company will be headquartered in Raleigh, N.C., and will maintain significant operation centers in New York, Pasadena, Omaha, Phoenix, Jacksonville, Fla., New Jersey and Columbia, S.C., among other locations.
>
> Frank Holding, Jr., Chairman and CEO of First Citizens, will retain the same roles at the combined company. Ellen R. Alemany, Chairwoman and CEO of CIT, will assume the role of Vice Chairwoman and play a key role in the merger integration. In addition, she will serve on the Board of Directors of the combined company.
> The Board of Directors of the combined company will consist of 14 directors, the current 11 First Citizens Board members and three CIT Board members, including Ms. Alemany.
>
> "This is a transformational partnership for First Citizens and CIT designed to create long-term value for all of our constituents including our stockholders, our customers, our associates and our communities," said Frank Holding, Jr. "We have

long admired CIT's market-leading commercial business, including their strong market position across multiple asset classes. Under Ellen's leadership, CIT has made tremendous progress in reducing its cost of funds, enhancing risk management processes and retaining key talent. First Citizens has a long history of delivering strong returns to our stockholders, gathering low-cost deposits and driving strong earnings, which are all supported by an exceptional credit culture, strong capital and excellent risk management. Together, First Citizens and CIT will be able to leverage both companies' unique attributes to create the 19th largest bank in the country, well-positioned to compete across the United States."

Ellen R. Alemany, Chairwoman and CEO of CIT, said, "Frank and I have long respected each other's companies and believe this transaction will accelerate our strategic goals by bringing together the expertise of both banks to create scale, strength and value. I'm proud of the work we have done to transform CIT in recent years to a leading, national commercial bank. This transaction will build on those efforts and more fully unlock the potential in our core franchises. In addition, the strength that is created as a larger U.S. bank will enable greater opportunities for our team, our customers and our communities."

**A. Financially Compelling Transaction for All Stockholders**

**Significant Earnings Per Share Accretion and Tangible Book Value Per Share Accretion:** The transaction is targeted to deliver in excess of 50% EPS accretion once cost savings are fully phased in. The tangible book value per share accretion is targeted to be in excess of 30% at closing.

**Cost Synergies**: The companies have identified approximately 10% in targeted pro forma combined noninterest expense savings.

**Long-term Stockholder Value Creation and Tangible Book Value Per Share Growth Focus**: The combined company expects to continue to emphasize tangible book value growth over time. On a pro forma basis, the combined company targets delivering top-tier operating performance, with a ROTCE of approximately 13%.

**Strong Capital and Credit Reserve Levels**: The combined company is expected to have in excess of 9.4% Tier I Common Equity at closing. The combined allowance for credit losses will be approximately $1.8 billion in aggregate, representing approximately 2.4% of the loan portfolio. The combined company's targeted strong capital ratios are designed to support organic growth, additional acquisitions and capital management strategies to enhance stockholder value.

**B. Strategically Compelling for Both Organizations**

**Enhanced Scale to Drive Growth, Improve Profitability and Enhance Stockholder Value**: The pro forma organization, with over $100 billion in assets and over $80 billion in deposits, combines two high-quality companies focused on driving strong, consistent growth and profitability. First Citizens stockholders have

enjoyed stock price performance that has exceeded the Nasdaq Bank Index over the last 5-, 10- and 20-year periods. This transaction provides a platform for growth and profitability that is expected to drive stockholder returns for many years into the future.

**Combines First Citizens' Lower Cost Deposit Franchises and CIT's Market-Leading Nationwide Commercial Franchise**: The combined company expects to benefit from the combination of First Citizens' strong, low-cost deposit base and CIT's leading nationwide lending platform. CIT's industry, asset class and capital markets expertise can deliver financing solutions to First Citizens' strong client base. First Citizens brings a full suite of banking products and services to CIT commercial and retail customers, including deposit, mortgage, auto financing, merchant services, credit and debit cards, wealth management and trust solutions. First Citizens' strong deposit suite and low-cost funding is targeted to enable the pro forma company to expand its business and compete more effectively with larger competitors. CIT's HOA business is also expected to continue to be an important low-cost funding source.

**Experienced Management Teams with Significant Integration Experience:** This merger combines two highly respected management teams operating complementary business lines. Both companies have significant merger integration experience and proven track records of successfully integrating acquisitions to drive stockholder value. First Citizens has been in a continuous merger and integration cycle for the last 10+ years acquiring over 25 companies resulting in superior business performance and stock price performance over this time period. CIT's three acquisitions since 2014 represent over $30 billion in acquired and integrated assets.

**Combined Company Poised For Long-Term Growth:** Several of the combined companies' business lines will be enhanced through this combination. The combined Southern Californian branch and deposit-gathering footprint will be substantially enhanced. The mortgage business is targeted to double in size with attractive growth prospects. Complementary SBA business lines are targeted to significantly increase in scale and present additional opportunities for growth.

**Significant Opportunity to Optimize the Balance Sheet and Earnings**: Lower funding costs are targeted to enable CIT's commercial lines to compete more effectively, and a diversified funding mix should enable the combined company to reduce financing costs through improved credit ratings for CIT's businesses and additional scale and diversification.

**Combined Company Laser-Focused on Credit Quality, Capital Adequacy and Risk Management:** First Citizens has a long track record of significantly below peer Non-Performing Asset ratios and Net Charge-Off ratios. Both companies have completed extensive due diligence. This transaction provides immediate product and geographic diversification.

**Strong Reputation, Robust Customer Relationships and Similar Cultures Reduce Integration Risk:** The combined company is designed to leverage the strong reputation of both companies with the goal of delivering strong performance and results for customers, colleagues and communities.

**Company Well Positioned for Long-Term Value Creation Due to Stable Low-Cost Deposits, Strong Presence in High-Growth MSAs Nationwide and Online Platform, Providing Diverse Funding Mix**: First Citizens' deposit costs are currently 0.13% and have historically been consistently below peer funding costs. CIT's direct banking deposit platform offers a unique opportunity to scale online deposits in a cost-efficient manner and its leading homeowner association deposit channel offers additional growth and diversification.

**C. Approval and Timing**

The merger is expected to close in the first half of 2021, subject to satisfaction of customary closing conditions, including receipt of regulatory approvals and approval by the stockholders of each company.

**D. Transaction Advisors**

Piper Sandler & Co. served as financial advisor to First Citizens, with Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P. serving as legal advisor. Keefe, Bruyette & Woods, A Stifel Company, and Morgan Stanley & Co. LLC served as financial advisor to CIT, with Sullivan & Cromwell LLP serving as legal advisor.

* * *

27. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that CIT Group's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**E. <u>The Materially Incomplete and Misleading Registration Statement</u>**

28. On November 16, 2020, CIT Group and First Citizens jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the

Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

29. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "First Citizens Projections") and provided them to the Board and the Financial Advisors by management of both CIT Group and First Citizens with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

30. For the Company Projections and the First Citizens Projections, the Registration Statement provides CIT but fails to disclose the CIT Street Forecasts that were relied on by the

Financial Advisors to extrapolate certain financial projections with respect to CIT which were approved by the CIT Board.

31. The Registration Statement fails to disclose the Case 1 Adjusted CIT Financial Projections and Case 2 Adjusted CIT Financial Projections as used in the *CIT Public Trading Comparables Analysis* on pages 107-109.

32. The Registration Statement also fails to disclose estimates regarding certain pro forma financial effects of the first step merger on First Citizens that were prepared by First Citizens management and provided to and discussed with the Financial Advisors by First Citizens management, and used and relied upon by the Financial Advisors at the direction of CIT management and with the consent of the CIT Board.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33. With respect to KBW' *CIT Selected Companies Analysis – Selection Based on the Size of Total Assets*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by KBW in the analysis.

34. With respect to KBW' *CIT Selected Companies Analysis – Selection Based on the Deposits Operations*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by KBW in the analysis.

35. With respect to KBW' *First Citizens Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by KBW in the analysis.

36. With respect to KBW' *Pro Forma Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by KBW in the analysis.

37. With respect to KBW's *Relative Contribution Analysis*, the Registration Statement fails to disclose: (i) historical balance sheet data for First Citizens and CIT as of September 30, 2020; (ii) CIT Street Forecasts; (iii) the financial forecasts and projections of CIT provided by CIT management ***as adjusted*** based on CIT's guidance and used and relied upon by KBW at the direction of such management and with the consent of the CIT Board; and (iv) the diluted CIT share count as of September 30, 2020 per CIT management and diluted First Citizens share count as of September 30, 2020 per First Citizens management.

38. With respect to KBW's *Pro Forma Financial Impact Analysis*, the Registration Statement fails to disclose: (i) the closing balance sheet estimates as of March 31 2021 for First Citizens and CIT; and (ii) the pro forma assumptions.

39. With respect to KBW' *CIT Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the basis for assuming 8.0% earnings growth for 2021 through 2023 and 6.0% balance sheet growth thereafter; (ii) the present value of the estimated excess cash flows that CIT could generate over the 5-year period from 2021 through 2026; (iii) the present value of CIT's implied terminal value at the end of 2026 and the inputs and assumptions for applying a range of 7.0x to 9.0x CIT's estimated 2026 earnings; (iv) the inputs and assumptions underlying the discount rates ranging from 11.0% to 14.0%; (v) the basis for assuming that CIT would maintain a common equity tier 1 ratio of 10.50% and CIT would retain sufficient earnings to maintain that level.

40. With respect to KBW' *First Citizens Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the basis for assuming 9.0% earnings growth for 2021 through 2023 and 7.0% balance sheet growth thereafter; (ii) the present value of the estimated excess cash flows that First Citizens could generate over the 5-year period from 2021 through

2026; (iii) the present value of First Citizens' implied terminal value at the end of 2026 and the inputs and assumptions for applying a range of 9.0x to 12.0x First Citizens' estimated 2026 earnings; (iv) the inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%; (v) the basis for assuming that First Citizens would maintain a common equity tier 1 ratio of 10.00% and First Citizens would retain sufficient earnings to maintain that level.

41. With respect to KBW' *Pro Forma Combined Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the present value of the estimated excess cash flows that the combined entity could generate over the 5-year period from 2021 through 2026 (ii) the present value of the pro forma entity's implied terminal value at the end of 2026 and the inputs and assumptions for applying a range of 9.0x to 12.0x the pro forma entity's estimated 2026 earnings; (iv) the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; (v) the basis for assuming that the pro forma entity would maintain a common equity tier 1 ratio of 10.00% and would retain sufficient earnings to maintain that level.

42. With respect to Morgan Stanley's *CIT Public Trading Comparables Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Morgan Stanley in the analysis.

43. With respect to Morgan Stanley's *CIT Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) projected dividends on shares of CIT common stock for the fourth quarter of 2020 through December 31, 2025, as used by Morgan Stanley in its analysis; (ii) projected terminal value of CIT common stock as of December 31, 2025; (iii) Morgan Stanley's basis for using terminal forward multiples of 7.0x to 9.0x to the terminal year 2026 estimated earnings; (iv) the manner in which Morgan Stanley calculated the discount rates of 12.5% to 14.0%, as well as the specific inputs and assumptions underlying the discount rates used by

Morgan Stanley in its analysis; and (v) the inputs and assumptions for using 1.0% opportunity cost of cash.

44. With respect to Morgan Stanley's *First Citizens Public Trading Comparable Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Morgan Stanley in the analysis.

45. With respect to Morgan Stanley's *First Citizens Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the basis for assuming 9% annual growth after 2022 and that First Citizens would make distributions of capital in excess of the amount necessary to achieve a 10.0% common equity Tier 1 ratio level; (ii) projected terminal value of CIT common stock as of December 31, 2025; (iii) Morgan Stanley's basis for using terminal forward multiples of 9.0x to 11.0x to the terminal year 2026 estimated earnings; (iv) the manner in which Morgan Stanley calculated the discount rates of 6.8% to 8.8%, as well as the specific inputs and assumptions underlying the discount rates used by Morgan Stanley in its analysis; and (v) the inputs and assumptions for using 1.0% opportunity cost of cash.

46. With respect to Morgan Stanley's *Pro Forma Dividend Discount Analysis*, the Registration Statement fails to disclose (i) the Synergies; inputs and assumptions in using a range of terminal forward multiples of 9.0x to 11.0x to the terminal year 2027 estimated earnings, 9.2% to 11.2% discount rates, and a 1.0% opportunity cost of cash.

47. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

51. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

52. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

53. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of CIT Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of CIT Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CIT Group, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CIT Group, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 20, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Gloria Kui Melwani*

Gloria Kui Melwani (#5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*